stranger, the agent a stranger, the workman being without money, (2) the credit of the vessel was necessary to be resorted to. (3) The workman who ordered the materials ordered them on the credit of the ship, and the materials were furnished on the credit of the ship. The case of The Eledona [Cases Nos. 4,340 and 4341] differs from the present one in the fact that there was no necessity in that case for a resort to the credit of the vessel. There the mast was furnished to the contractors on their order, not to the master or his crew; and there the price of the mast was actually paid to the contractors by the master, who was supplied with money. Here the materials libelled for were never paid for by owner or master. The master had no money with which to do so. The inference from all the facts is that the owner has none. There has not been from the beginning, and is not now, any source from which payment for the extra materials can come, except the credit of the vessel. This constitutes the very difference between the two cases. There the credit of the vessel was not necessary. Here it was necessary.

I therefore, on the whole case, must decide that the libellants should be paid. Mr. Hardy must recover the whole balance of his bill as claimed. Messrs. Neely & Co. should recover the original amount named, subject to deductions, which bring the amount he may recover to $61. I will so decree.

---

## Case No. 6,063.

### In re HARE.

[43 How. Pr. 86.]

District Court, S. D. New York. March 8, 1872.

BANKRUPTCY—TAXATION OF COSTS—MARSHAL'S FEES AND EXPENSES.

[1. Additional allowances should not be made to the marshal, under section 47 of the act of 1867 (14 Stat. 540), unless it is shown that he has performed something beyond his ordinary duties.]

[2. The register's decision disallowing a charge for a watchman, on the ground that no watchman was necessary, reversed by the court, and the item allowed.]

In bankruptcy. In the matter of Utley Hare.

By I. T. WILLIAMS, Register:

I, the undersigned register in charge of the above entitled matter, do hereby certify, that upon the taxation of the marshal's costs therein, I was attended by Chas. H. Wight, Esq., the assignee of said bankrupt, and the said marshal, by his deputy, Oliver Fiske, Esq., who presented for taxation a bill of the items of his said costs and fees, which bill is hereto annexed. That I proceeded to take the testimony of James Turney and Oliver Fiske, which is hereto annexed. That after hearing the respective parties, I taxed and deducted from said bill the following items, to wit:

| | |
|---|---|
| Copying papers | $ 1 00 |
| Advertising in Commercial Advertiser.. | 4 50 |
| 24 days' custody, from January 29 to February 22d, at $2.50 | 60 00 |
| Allowance to marshal | 25 00 |
| | $90 50 |

That, as to the said item of $60, and the said item of $25, the marshal excepted to said taxation, and requested that the point be certified to the district judge for decision.

And I further certify, that the reasons for taxing said item of $60 from said bill, are as follows: It appears from the testimony, that the property in question was a quantity of hardware upon the second floor or first loft, of a building, the first floor and the second and third lofts of which were used by other parties for mercantile purposes. That said goods were deemed sufficiently secure at night by locking the door of the room in which they were, the custodian keeping the key. If so secured in the night, it is not suggested that they would not be equally secure under the lock and key in the daytime. The suggestion that business letters that might contain money, drafts or other valuables, are usually directed to the place of business, and might fall into the hands of unreliable persons, in case the marshal's custodian was not there to receive them, is answered by the fact, that if the door of the room were locked the postman would scarcely deliver them to a person outside. Besides, it would be easy to arrange with the postman—for the same man comes to the building every day to deliver letters—to deliver such letters at the marshal's office or elsewhere. But I think, the marshal is bound to deal as economically with property that he seizes under a warrant as if the property were his own, by purchase or otherwise. It cannot, in such case, be pretended, that he would be at the expense of having one man spend his time in watching it for the space of a month or so. He would either lock up the room or box and store the goods. And when it is considered, that the responsibility of the marshal for loss of such goods, is measured by what is called ordinary care, such care as prudent men ordinarily take of their own property, the suggestion of his liability in such a case is absurd. See Browning v. Hanford. 5 Hill, 588; Moore v. Westervelt, 1 Bosw. 357; Jenner v. Joliffe, 6 Johns. 9. It may be suggested that the marshal should be allowed upon this item, a sum equal to what it would have cost to have boxed and stored the goods. In answer to this, it appears that about the 12th of February, the landlord of the premises in which the goods were, obtained possession by summary proceedings, and the marshal was then obliged to, and did, box the goods and store them elsewhere. A bill amounting to $169.33 for thus boxing, removing and storing, is presented to the assignee by McEntree & Co.

I took the testimony of Charles McEntree, a member of said McEntree & Co., and here-

with hand the same to the court, with the bill and vouchers annexed; from which it appears, that McEntree & Co. did this work with the aid of the men of the deputy marshal, and that they paid said deputy $30 for the aid so rendered by his men. If, therefore, the marshal were allowed anything for such expenses, it would be to pay a second time for the same services. Had the marshal in the first instance done this boxing and removing, it would have avoided all pretext of claim for custodianship, and put the estate to no more expense than it has now incurred therefor. The fact that the attorney for the petitioning creditors at the time he handed the warrant to the marshal, expressed the opinion, that it would be necessary to put a man in charge, I don't deem material. He could at best bind but one of the creditors, and I don't think that the marshal can substitute the opinion of the attorney for his own. He must act upon his own official discretion in the execution of the warrant. As to the item, "allowance to the marshal, $25," I don't understand that it is claimed that any extra or unusual services were rendered in the case; none are stated, certainly. If this item is allowed it must be under the provisions of section 47, which is in these words: "For cause shown and upon hearing thereon such further allowance may be made as the court in its discretion may determine." It is clear that something beyond the ordinary duties which a marshal is called upon to discharge in all cases, is here contemplated. I cannot think that the present case is brought within the purview of this provision. As the taxation of the other two items were not excepted to, I need not state why they were rejected.

BLATCHFORD, District Judge. I think it is proper to allow the item of $60, and to disallow the item of $25. The clerk will certify this decision to the register, Isaiah T. Williams, Esq.

———

HARE (STEVENSON v.). See Case No. 13,-416.

HARE (UNITED STATES v.). See Cases Nos. 15,302–15,305.

———

## Case No. 6,064.

### HARGRAVE v. CREIGHTON.

[1 Woods, 489.] [1]

Circuit Court, S. D. Georgia. April Term, 1873.

CONTRACT FOR PAYMENT OF MONEY—SUIT IN ANOTHER COUNTRY—MEASURE OF DAMAGES.

Where a contract for the payment of money is made in one country, payable in the currency of that country, upon suit brought in another country to recover for breach of the contract, the plaintiff ought to recover such a sum in the

---

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

currency of the country where the suit is brought, as would be equivalent to the sum to which he would be entitled in the country where the debt is payable, calculated by the real and not the nominal par of exchange.

This case was submitted pro forma to a jury. The only question was upon the amount of the verdict.

Henry R. Jackson, for plaintiff.
R. E. Lester, for defendant.

WOODS, Circuit Judge. This action is founded on several bills of exchange. The following is a copy of one of them: "£166. 13. 4. Manchester, May 2, 1870. Nine months after date, pay to our order one hundred and sixty-six pounds, thirteen shillings and four pence, for value received. Geo. J. Hargrave & Co. To Messrs. Hugh Creighton & Co. 883 Belfast. Payable in London." The other bills are similar, save in amount and time of payment. The bills show that the contracts were made and were to be performed in England. It is admitted that the verdict must go for the plaintiff. The only question controverted is, what ought to be the amount of the verdict? Upon this point plaintiff has introduced the testimony of a witness, who swears that it would require the sum of six thousand and fifty-three dollars and forty-nine cents, to purchase a bill of exchange on London for £1078. 16. 9. This is 26¼ per cent. more than the face value of the bills sued on, and is made up partly in exchange and partly in the premium on gold. The plaintiff claims that he is entitled to this 26¼ per cent., and the defendant denies it.

The question whether, in a case similar to this, the plaintiff would be entitled to exchange, has been decided adversely to the claim in the courts of New York. Thus in Scofield v. Day, 20 Johns. 102, where a promissory note was drawn at Montreal, in the British province of Lower Canada, payable to parties residing in England, it was held, that in a judgment obtained on a note in a court of the state of New York, the plaintiffs were not entitled to any allowance for the current rate of exchange in England at the time of the judgment. So in Martin v. Franklin, 4 Johns. 124, it was held, that when a person in New York purchases goods in England, and is sued here, the creditor can recover the amount at the par of exchange only, and is not entitled to any allowance for the rate of exchange, or for the price of bills on England. The court said, "The debt is to be paid according to the par and not the rate of exchange. It is recoverable and payable here to the plaintiffs or their agent, and the courts are not to inquire into the disposition of the debt after it reaches the hands of the agent." The same doctrine was held in Adams v. Cordis, 8 Pick. 260, as the proper rule in all cases, except bills of exchange. On the other hand, Mr. Justice Story says (Confl. Laws, §§ 308–310): "When a contract is made in one country and is payable in the